UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

B & P BAIRD HOLDINGS, INC.,                          Case No. DT 10-10941
                                                     Chapter 7
            Debtor.                                  Hon. Scott W. Dales

_____/

### SUPPLEMENTAL OPINION

PRESENT:   HONORABLE SCOTT W. DALES
           United States Bankruptcy Judge

## I.  INTRODUCTION

This opinion addresses whether the corporate Chapter 7 debtor, B & P Baird Holdings, Inc. (the "Debtor"), and its shareholder ("Mr. Baird"), have standing to be heard with respect to at least two contested matters before the court:  (1) the Chapter 7 trustee's motion to approve a settlement (the "Settlement") that he reached with King Par, LLC (hereinafter "New King Par"); and (2) the Debtor's objection to the claim of Izzo Golf, Inc. ("Izzo Golf").  The court's decision regarding standing will necessarily affect other contested matters in which the Debtor and Mr. Baird wish to be heard.

On October 26, 2011, the court held a status conference in Traverse City, Michigan to consider the Debtor's objection to Izzo Golf's claim.  At that hearing, Izzo Golf challenged the standing of the Debtor and Mr. Baird to be heard in that matter.[1]  Anticipating the need to address the Debtor's standing to object to the Settlement on the court's next Traverse City motion day and recognizing the common questions of fact and law affecting standing in both

---

[1] *See* Objection of Debtor to Claim No. 5 of Izzo Golf, Inc. (DN 74).  By filing Claim No. 5, Izzo Golf seeks to recover $12,052,367.08 related to its successful prosecution of patent infringement claims against the Debtor in the United States District Court for the Western District of New York.

contested matters, the court issued a Scheduling Order directing the Debtor and Mr. Baird to file briefs and affidavits on the issue. The court gave notice that its decision on standing would apply to other contested matters in the case.

The issue of the Debtor's and Mr. Baird's standing was fully briefed, and the court has reviewed each submission directed to the question. After permitting extensive oral argument in Traverse City, Michigan on November 16, 2011, the court gave a bench ruling to explain its reasons for rejecting the Debtor's and Mr. Baird's standing. Immediately thereafter, the court heard argument from the Trustee and Izzo Golf regarding the Settlement, and announced its intention to grant the Trustee's motion to approve the Settlement (the "Motion," DN 82). Given the hotly contested nature of this proceeding and the likelihood of an appeal, however, it is prudent to supplement and amplify the court's oral ruling for the sake of the reviewing court.

## II. STANDING

Any recovery from this proceeding for either Mr. Baird or the Debtor,[2] will depend upon the existence of a surplus of estate assets over allowable claims, resulting in payment to the Debtor under 11 U.S.C. § 726(a)(6). If there is no surplus, there will be no distribution to the Debtor (or, derivatively, Mr. Baird), and therefore they lack a pecuniary interest in these proceedings. *See, e.g., Morton v. Morton (In re Morton)*, 298 B.R. 301, 307 (6th Cir. B.A.P. 2003) ("A party in interest includes those persons with a personal stake or pecuniary interest in

---

[2] Strictly speaking, Mr. Baird will never be entitled to any distribution under 11 U.S.C. § 726 because that section provides for payment of any surplus "to the debtor," presumably relying on state corporate law to govern distributions beyond that point. Indeed, as a matter of black letter law, a shareholder has no ownership interest in his corporation's property, only an ownership interest in the corporation itself. *Bourne v. Sanford*, 41 N.W.2d 515, 522 (Mich. 1950). Therefore, any right that Mr. Baird may have with respect to the bankruptcy estate is necessarily indirect. Of course, the indirect nature of Mr. Baird's interest presents a problem under Sixth Circuit authority, which generally holds (at least with respect to appellate standing in bankruptcy), that in order to have standing, a litigant "must have been *directly* and adversely affected pecuniarily by the order." *Fidelity Bank, Nat. Ass'n v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996) (emphasis added). The Trustee did not press the point, and the court's decision with respect to the Debtor's lack of standing makes it unnecessary to consider Mr. Baird's standing which, in any event, depends upon the Debtor's right to a surplus under 11 U.S.C. § 726(a)(6).

the outcome of the controversy."); *In re Olsen*, 123 B.R. 312, 313 (Bankr. N.D. Ill. 1991) ("Unless the debtor can show that the estate is a surplus estate that would yield a dividend to the debtor or that disallowing the claim would produce a surplus to which the debtor would then be entitled, the debtor lacks standing to contest the claim.").

As the court noted in its oral ruling, a litigant's standing is an aspect of jurisdiction, and courts generally require the proponent of federal jurisdiction to establish the jurisdictional facts by competent proofs. *See, e.g., McNutt v. General Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936) ("If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof."). The authorities that the Debtor and Mr. Baird cited in their brief support this conclusion in the bankruptcy setting. *See, e.g., In re Rake*, 363 B.R. 146, 151 (Bankr. D. Idaho 2007) (debtor must support standing by offering evidence of a "reasonable possibility" of pecuniary interest) (*citing Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.)*, 1997 WL 327123 (N.D. Ill. May 27, 1997)); *see also Morlan v. Universal Guaranty Life Ins. Co.,* 298 F.3d 609, 620 (7th Cir. 2002) (noting the "probabilistic character" of the standing requirement).

The Debtor and Mr. Baird attempted to meet their burden primarily by pointing to the fifth count in the Trustee's complaint in Adv. Proc. No. 11-80397 (the "Adversary Proceeding") through which the Trustee seeks a declaration subjecting all of the assets of Mr. Baird (and his co-defendant wife) to the payment of the claims against the Debtor on a veil piercing or alter ego theory (hereinafter "Count V"). Characterizing the Debtor's argument, if the Trustee had a colorable basis for pleading Count V, the court must assume that all of the assets of Mr. and Mrs. Baird, approximately $14,000,000.00, will be included in the estate. The argument continues: if the Trustee is successful in bringing the Bairds' assets into the estate, and if the Debtor is

successful in reducing Izzo Golf's claim, there is a reasonable possibility of a surplus and the Debtor (and Mr. Baird) has standing. The court characterized the argument as "bootstrapping" standing based on Count V.

Not surprisingly, neither the Debtor nor Mr. Baird advocated merits of the Trustee's alter ego or veil piercing theories, but the fact remains that their success in establishing standing as a matter of fact and law depends to a considerable degree upon the Trustee's successful prosecution of the veil piercing and alter ego theories in Count V. As a matter of fact, neither the Debtor nor Mr. Baird offered any evidence of the Bairds' assets or liabilities, although they might have accepted the court's invitation in the Scheduling Order (DN 116) to offer an affidavit or testimony. As a matter of law, in its ruling from the bench, the court expressed profound doubts about the merits of Count V.[3] Even assuming the Trustee can assert his veil piercing and alter ego theories, he nevertheless seeks an extraordinary, equitable remedy that the court would not lightly impose.

From the bench the court further explained that, through Count V, the Trustee was seeking only declaratory relief to the effect that any of the Bairds' assets needed to pay claims would be made available to the estate. The court noted that the state law origins of Count V limit the relief on such a theory to the benefit of creditors. Given the declaratory nature of the claim, the Debtor could never benefit from any such recovery, and the court would cap any actual

---

[3] Most generally, the court expressed concern that bringing all of the Bairds' assets into the estate would be tantamount to commencing an involuntary bankruptcy proceeding against them without obeying 11 U.S.C. § 303 and other applicable law. Moreover, it seems clear that the Debtor, and therefore the Trustee, has no authority to pierce its own veil. *In re RCS Engineered Products Co., Inc.*, 102 F.3d 223 (6th Cir. 1996). Perhaps the Trustee may have rights under 11 U.S.C. § 544 (assuming the veil piercing and alter ego theories are not personal to any particular creditor) but the Debtor did not offer argument on this point. *See Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416 (1972) (trustee cannot assert causes of action belonging to specific creditors); *In re Del-Met Corp.*, 322 B.R. 781, 835 (Bankr. M.D. Tenn. 2005) (finding that the "Sixth Circuit would not embrace § 544(a) as a source of standing" of Chapter 7 Trustee to assert veil piercing theory); *In re R.C.S. Engineered Products Co.*, 168 B.R. 598 (Bankr. E.D. Mich. 1994) (rejecting 11 U.S.C. § 544 as basis for asserting alter ego claim), *rev'd on other grounds*, 102 F.3d 223 (6th Cir. 1996). As the court observed during the hearing, however, it is not resolving Count V, but simply making a prediction for purposes of evaluating the Debtor's standing.

recovery beyond the declaratory relief the Trustee presently seeks in Count V to the amount of allowable claims and administrative expenses.  Because of the declaratory nature of Count V, and the nature of the claim itself, there could be no surplus.  Moreover, there was no competent evidence of the extent of the Bairds' assets, save for the Trustee's hypothesis in his preliminary injunction papers he filed in the Adversary Proceeding.

In prior proceedings involving New King Par's motion for relief from stay last February 7, 2011, Mr. Witte, for the Debtor, filed a response unequivocally stating as follows:

> [T]his is a Chapter 7 proceeding involving a corporation. The Debtor has no assets, and will have no assets ever again, so preserving [indemnity] claims against the debtor is an exercise in futility.

*See* Debtor's Response to King Par, LLC's Motion for Relief from Stay (DN 50) at ¶ 8.  At oral argument last week, Mr. Witte conceded that he made these statements after assisting in the preparation of the schedules, with full knowledge of the Debtor's supposed prepetition claims against New King Par, Young, Basile, Hanlon, MacFarland, PC, R. Jamison Williams, Jr., among other targets.  This statement constitutes an admission that establishes an evidentiary baseline for the court's standing determination.  From this baseline, it appears the only premise for standing is Count V, which the court has already determined does not establish a reasonable possibility of surplus.

In addition, the court notes from the schedules and other filings, and there is no meaningful controversy, that if the estate has assets, they take the form of "soft assets" -- causes of action and avoidance powers -- that the Debtor and Mr. Baird did not meaningfully attempt to evaluate as they sought to establish standing.

As for the universe of claims, claims filed against the estate are entitled to *prima facie* evidentiary effect under Fed. R. Bankr. P. 3001(f).  With respect to Izzo Golf especially, after

reviewing the parties' arguments and authorities, the court concludes that the $3,286,476.65 Judgment on Jury Verdict entered on July 7, 2010 in the Western District of New York (the "Judgment") is entitled to preclusive effect in this bankruptcy court.[4] Certainly, the Debtor and its privies are bound by the jury's verdict, except to the extent the Trustee as the estate's representative seeks post-judgment relief. The fact that the Judgment may be modifiable in post-judgment proceedings does not change the court's conclusion. *See American Postal Workers Union Columbus Area Local AFL-CIO v. United States Postal Service*, 736 F.2d 317, 319 (6th Cir. 1984) (alternative holding or *dicta* stating that non-final decision on motion to dismiss should have had preclusive effect in later case); *see also Perez v. Volvo Car Corp.*, 247 F.3d 303, 309 n.4 (1st Cir. 2001); *Pharmacia & Upjohn Co. v. Myland Pharmaceuticals, Inc.*, 170 F.3d 1373, 1381 (Fed. Cir. 1999); *Cycles, Ltd. v. Navistar Fin. Corp.*, 37 F.3d 1088, 1090 (5th Cir. 1994); *Tripati v. Henman*, 857 F.2d 1366 (9th Cir. 1988). Moreover, if anyone will be permitted to seek post-judgment relief in the Western District of New York, it will be the Trustee as the representative of the estate under 11 U.S.C. § 323(a) and the person automatically substituted in *lieu* of the Debtor in that litigation under Fed. R. Bankr. P. 2012(a). The Debtor, however, forfeited any right to return to the Western District of New York when it filed for relief under Chapter 7. Unless and until the rendering court modifies the Judgment, the issues resolved at trial or merged into that Judgment are conclusively established in the bankruptcy court, and the court will not permit the Debtor to use the claims allowance process as a second bite at the apple. As set forth in the Judgment, Izzo Golf's claim is enforceable at least to the extent of $3,286,476.65. *See* 11 U.S.C. § 502(b)(1).

---

[4] Izzo Golf filed a claim in the amount  $12,052,367.08 based on the jury's finding that the Debtor's infringement was willful, thereby warranting additional recovery for interest, fees, treble damages, and other "add ons" potentially available through post-judgment proceedings in patent cases.

This means that considering Izzo Golf's claim alone, there will likely be at least $3.2 million in allowable claims against the estate.  Moreover, according to the court's claim register, creditors other than Izzo Golf (and Walmart) have filed substantial claims against the estate exceeding $791,000.00 in the aggregate, entitled to *prima facie* evidentiary effect until the presumption of validity and amount is rebutted.  Fed. R. Bankr. P. 3001(f); Fed. R. Evid. 301.

The only realistic source of funds from which the Trustee could pay these claims is the recovery in the Adversary Proceeding, which will not likely exceed the approximately $4,201,866.00 that the Trustee claims the Debtor fraudulently transferred to New King Par and the Bairds.  The court notes that one third of this amount, if recovered, will be remitted to the Trustee's counsel under the court-approved contingency fee agreement, establishing beyond peradventure that there is no reasonable possibility of surplus under 11 U.S.C. § 726 upon which the Debtor or Mr. Baird's standing necessarily depends.

Under the circumstances, the court finds that neither the Debtor nor Mr. Baird has established a reasonable possibility of a surplus to support standing.  Accordingly, the court will not entertain any further argument from the Debtor or Mr. Baird.[5]

### III.  SETTLEMENT WITH NEW KING PAR

After rendering its oral decision on the standing issue, the court proceeded to consider the Trustee's Motion to approve the Settlement with New King Par.  In so doing, the court applied the well-established standards governing bankruptcy settlements[6] by apprising itself of the underlying facts, especially concerning the Debtor's claims against New King Par under the asset purchase agreement described in the Motion.  The court weighed the potentially conflicting

---

[5] As a defendant, Mr. Baird has a pecuniary interest in the outcome of the Adversary Proceeding and clearly has standing to defend himself in that matter.

[6] *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Anderson,* 377 B.R. 865 (6th Cir. B.A.P. 2007).

interests of all relevant parties, considered the probability of success on the merits of the Trustee's claims against New King Par and *vice versa*, as well as the complexity and expense of litigation.

At the hearing, the court interrogated the Trustee's counsel regarding the terms of the Settlement and its relationship to the base case and the Adversary Proceeding. In support of the Settlement, counsel described substantial litigation risk given the complexity of the accounting issues (*e.g.,* whether certain "supplier receivables" under the asset purchase agreement are in fact receivables or inventory), the potentially binding and adverse effect of the Plante Moran PLLC review conducted pursuant to the asset purchase agreement, and the fact that the Settlement will relieve the estate of the burden of paying New King Par's $500,000.00 claim. Although the Trustee's counsel did not concede the merits of New King Par's claim against the estate, he expressed some doubt about his success in opposing the claim given the language of the parties' agreement and the accounting controversies upon which the claim depends.

Significantly, the estate's largest creditor -- Izzo Golf -- expressed in unequivocal terms its support for the Settlement on the record. And, although the Debtor and Mr. Baird lack standing, the court could not avoid considering their views, as outlined in their briefs, including those expressed in response to New King Par's motion for relief from stay. As noted above, Debtor's counsel last February noted that "[t]he Debtor has no assets, and will have no assets ever again." *See* Debtor's Response to King Par, LLC's Motion for Relief from Stay (DN 50) at ¶ 8. At the hearing regarding the Settlement, he confirmed that he made these statements after assisting the Debtor in preparing schedules five months earlier, including Schedule B listing the New King Par account receivable at $1,000,000.00, but also indicating that the Debtor's claim is disputed. *See* Schedule B (DN 1 at p. 7). If Mr. Baird or the Debtor regarded the various claims

listed on Schedule B as truly valuable, it seems doubtful that they would have permitted the Debtor to seek relief under Chapter 7 and lose control over the prosecution of that claim, among others.  The Debtor's response to the New King Par lift stay motion fortifies the court's inference that the claims against New King Par are, if not worthless, then certainly good candidates for settlement.

Even considering the Trustee's concession that New King Par is probably collectible, the Trustee's description of the substantial litigation risk and benefits of the claim waiver gave the court no reason to substitute its judgment for the Trustee's, even assuming the law permits such second-guessing.  In short, the Trustee persuaded the court that his proposed Settlement is "fair and equitable" under *TMT Trailer* and its progeny.

Finally, because Mr. Baird did not press his offer to purchase the estate's claims against New King Par at the hearing to consider the Settlement, the court has no occasion to consider the request.  It remains a matter between Mr. Baird and the Trustee, as the estate's representative.

### IV.  POSTPONEMENT OF ORDER APPROVING SETTLEMENT

After announcing its intention to approve the Settlement, the court and counsel discussed the most practical way to formally approve the Settlement given the fact that:  (1) the Settlement is contingent on New King Par's success on its summary judgment motion filed in the Adversary Proceeding; and (2) the Debtor and Mr. Baird would likely appeal the order granting the Motion. The parties persuaded the court to postpone entry of the order approving the Settlement because the order could quickly become moot if New King Par does not prevail on its summary judgment motion.

Given the deadlines for filing a notice of appeal and the hearing on the summary judgment motion set for next month, the Debtor and Mr. Baird could be impelled to incur the

expense of pursuing an appeal of the court's order only to find that the order becomes moot upon entry of an order adverse to New King Par in the Adversary Proceeding. The court agrees with Izzo Golf's counsel that simply postponing entry of any order approving the Settlement until after the court resolves New King Par's summary judgment motion makes good sense. It will preserve resources while protecting the Debtor's and Mr. Baird's right to review the court's adverse conclusions regarding their standing. At the hearing and as predicted in the Scheduling Order, the court announced its intention to take a similar tack with respect to the Debtor's objection to Izzo Golf's claim.

Therefore, if the court grants New King Par's summary judgment in the Adversary Proceeding, it will enter an order approving the Settlement at that time, at which point the Debtor and Mr. Baird may file a notice of appeal.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Clerk shall serve a copy of this Supplemental Opinion pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Norman C. Witte, Esq., James W. Boyd, Esq., Jonathan R. Moothart, Esq., Michael D. Almassian, Esq., William D. Tomblin, Esq., David E. Bevins, Esq., W. Paul Slough, Esq., and all parties requesting notice of these proceedings.

END OF ORDER

**IT IS SO ORDERED.**

**Dated November 22, 2011**



Scott W. Dales
United States Bankruptcy Judge